**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X

Dennis Mikhno, Ruslan Mazurkevich, and Siarhei Utlik,

Plaintiffs,

-against-

Alexey Ruzaev and Blackberg, LP,

Defendants.

-------------------------------------------------------------------X

**Case No.**

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Dennis Mikhno ("Mr. Mikhno,"), Ruslan Mazurkevich ("Mr. Mazurkevich), Siarhei Utlik ("Mr. Utlik," and collectively "Plaintiffs"), bring this action for damages and other legal or equitable relief against Defendants Alexey Ruzaev ("Mr. Ruzaev") and Blackberg, LP ("Blackberg," and collectively, "Defendants"), and allege as follows:

## I. PARTIES

1. Plaintiff Mikhno is an individual who is a citizen of the state of Florida.

2. Plaintiff Mazurkevich is an individual who is a citizen of the state of New Jersey.

3. Plaintiff Utlik is an individual who is a citizen of the state of Florida.

4. Defendant Ruzaev is an individual residing in New York.

5. Defendant Blackberg is a limited partnership duly authorized and existing under the laws of the State of Delaware, with its principal place of business located at 165 Broadway, Ste. 2301, New York, NY 10006.

## II. JURISDICTION

6. Pursuant to 28 U.S.C. §1331, this Court has jurisdiction over this matter, as Plaintiffs allege violations by Defendants of the laws of the United States, including violations of

Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act of 1934") [15 U.S.C. § 78j(b)] and Rule 10b-5[17 C.F.R. § 240.10b-5], promulgated thereunder.

7. Supplemental jurisdiction over the common law and State law claims alleged herein is available under 28 U.S.C. § 1367(a) as they arise from the same core of operative facts as those arising under 28 U.S.C. § 1331, and are therefore properly brought before this Court.

8. Further, this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), as Plaintiffs and Defendants are citizens of different states, and the amount in controversy is not less than Seventy Five Thousand Dollars ($75,000.00).

9. Venue is proper in the Southern District of New York as Defendants are found, have agents, and transact their affairs as alleged herein within this district, and a substantial part of the events or omissions giving rise to this action occurred within this district.

10. Each Plaintiff entered into a Limited Partnership Agreement with Defendants that included an arbitration clause.

11. Plaintiffs have satisfied their obligation to arbitrate this dispute by initiating an arbitration proceeding by filing a Statement of Claim at Judicial Arbitration and Mediation Services, Inc. ("JAMS") on March 9, 2026 and proceeding with the arbitration until it was terminated by the Panel as a result of Defendants' non-payment of arbitration fees, and Plaintiff's inability to pay the significant fees owed by Defendants, on October 19, 2026. *See Exhibit 1 JAMS Stay and Termination Orders.*

12. This Court has held that an "'arbitration has been had' within the meaning of Section 3 of the FAA when an arbitral panel has terminated the proceeding for failure to pay without conducting further proceedings or granting an award." Cota v Art Brand Studios, LLC, 21-CV-1519 (LJL), 2021 WL 4864588, at *11 [SDNY Oct. 15, 2021] (Internal citations omitted).

13. Thus, Plaintiffs have fulfilled their contractual obligation to arbitrate, the completion of the arbitration proceeding was frustrated by Defendants' misconduct in that proceeding, and Plaintiffs claims are properly before this Court.

## VI. APPLICABLE LAW

14. Each of Plaintiffs' respective Limited Partnership Agreements with Defendants require that Delaware law be applied to any dispute arising therefrom.

## V. STATEMENT OF FACTS

15. Pursuant to Federal Rule of Civil Procedure 42, actions may be consolidated when such actions involve a common question of law or fact. *See F.R.C.P. 42.*

16. In the instant matter, each of the Plaintiffs engaged in identical transactions governed by substantially similar agreements with the same Defendants, and allege identical claims against Defendants. Thus all questions of fact and law at issue here are common to all of the Plaintiffs.

17. Mr. Ruzaev, the sole General Partner of Blackberg, represented to each of the Plaintiffs that Blackberg, LP was a legitimate business entity.

18. He provided to each Plaintiff a "Blackberg LP Investor Proposal" which stated that "Blackberg LP is an investment holding company structured as a closed-ended fund primarily engaged in the business of acquiring and holding significant positions in a concentrated number of large capitalization companies."[1] *See Exhibit 2, Investor Proposal.*

19. The investor proposal further stated that "For nearly 6 years, the investment strategy pursued by the [company] Total net return since inception: +1857.6% (CAGR 80-90%),

[1] Plaintiffs note that the written investor proposal was not provided to Mr. Mazurkevich, but Mr. Ruzaev made the same representations to him in an in-person meeting on May 23, 2025.

outperforming comparable benchmarks in the industry[,]" despite the fact that Blackberg LP had only been formed on November 23, 2020. *See Exhibit 2, Investor Proposal.*

20. In reliance on Mr. Ruzaev's representations, each of the Plaintiffs entered into a virtually identical Limited Partnership Agreement with Defendants Ruzaev and Blackberg.

21. Each of the Plaintiffs made a significant payment to Defendants as consideration for the assignment of partnership interests in Blackberg.

22. Each of the Plaintiffs executed an Agreement and Assignment of Partnership Interest ("Agreement"), whereby Defendants agreed to assign a specified amount of partnership interest for the benefit of each Plaintiffs in exchange for a specified amount not less than $20,000. Each Plaintiff executed their respective Agreement with Defendants in reliance on the provisions therein and Defendants' representations.

23. Each Agreement provided for an allocated lock-up period for principal amount ("Term") whereby the Agreement would terminate upon the expiration of the term.

24. Moreover, the Agreements detailed transactions in which each respective Plaintiff would be entitled to a fixed dividend ranging from eight percent (8%) to fifteen percent (15%) or a dividend distributed quarterly, in addition to the initial Principal Payment deposited with Defendants.

25. Each Agreement clearly stated the Principal Amount and any dividend would be returned to each Plaintiff within a defined period of time after termination of the Agreement.

26. Defendants failed to distribute the principal amount and fixed dividends of the invested amount for each Plaintiff contemplated in each Agreement within five (5) business days of terminating the Agreements, or thereafter.

27. Plaintiffs later learned that Blackberg, LP was an utterly fraudulent enterprise, used by Mr. Ruzaev to steal investor funds from Plaintiffs and others.[2]

28. On or about March 19, 2026, Mr. Mikhno filed a police report with the Broward County Sheriff's Office in Florida in regard to the theft of his funds by Defendants. *See Exhibit 3, Police Report.*

29. The Broward County Sheriff's Office initiated an investigation and identified several fraudulent driver's licenses used by Mr. Ruzaev. The Sheriff's Office advised Mr. Mikhno that they believed Mr. Ruzaev had fled the United States, but that if he was encountered in Florida their investigation had provided sufficient basis for the arrest of Mr. Ruzaev.

30. While Blackberg, LP had maintained a website that provided the appearance of legitimacy – blackberglp.com - during the period in which Plaintiffs invested, that website has since disappeared along with Mr. Ruzaev. *See Exhibit 4, Blackberglp.com Webpage noting "This domain isn't connected to a site[.]"*

31. To date, Defendants have failed to return any of the Plaintiffs' Invested Amount pursuant to the terms of their respective Agreements.

**A. The Plaintiffs' Limited Partnership Agreements**

**a. Dennis Mikhno**

32. On August 28, 2025, Mr. Mikhno entered into a Limited Partnership Agreement with Defendants Ruzaev and Blackberg, whereby Mr. Mikhno would make a wire transfer of twenty-five thousand dollars ($25,000.00) (the "Principal Amount") in exchange for a 0.20%

[2] *See e.g.* a New York County Supreme Court action captioned *Soon-Mee Kwan v. Alexey Ruzaev, et al., Index No. 656234/2025.*

partnership interest in Blackberg and an obligation to pay a dividend of fifteen percent (15%) of the Principal Amount.[3] *See Exhibit 5, Agreement and Assignment of Partnership Interest.*

33. Pursuant to the Agreement, Mr. Mikhno wired the Principal Amount into Defendants' account.

34. Under the terms of the Agreement, a four-month lock-up period for the Principal Amount would begin on August 28, 2025 and terminate on December 28, 2025.

35. On December 28, 2025, upon the termination of the lock-up period, Mr. Mikhno rightfully expected the Defendants to return the Principal Amount plus a fixed 15% dividend, in the amount of three thousand seven hundred fifty dollars ($3,750.00), within five (5) business days, pursuant to the terms of the Agreement and Assignment of Partnership Interest.

36. However, Defendants never fulfilled their obligation to transfer the Principal Amount and 15% dividends to Mr. Mikhno pursuant to the Agreement.

37. Despite Mr. Mikhno's repeated demands that the Principal Amount and promised dividend be returned to Mr. Mikhno, Defendants have refused to return the Principal Amount and promised dividend to date.

**b. Ruslan Mazurkevich**

38. On May 23, 2025, Mr. Mazurkevich entered into a Limited Partnership Agreement with Defendants Ruzaev and Blackberg, whereby Mr. Mazurkevich would make payment to Defendants in an amount of seventy thousand dollars ($70,000.00) (the "Principal Amount") in exchange for a 0.57% partnership interest in Blackberg and an obligation to pay a dividend of eight

[3] Plaintiffs note that at the time Defendants' solicited Mr. Mikhno's investment, Defendants had already defaulted on payment obligations to other investors, and failed to disclose this material information to Mr. Mikhno.

percent (8%) of the Principal Amount.[4] *See Exhibit 6, Agreement and Assignment of Partnership Interest.*

39. Prior to executing his limited partnership agreement, Mr. Mazurkevich inquired about a Private Placement Memorandum ("PPM") for Blackberg, and Mr. Ruzaev advised him via Telegram message that no PPM existed and it was "not needed because we have a fixed rate."

40. Pursuant to the Agreement, Mr. Mazurkevich paid the Principal Amount to Defendants via hand delivery to Mr. Ruzaev.

41. Under the Agreement, a three-month lock-up period for the Principal Amount would begin on May 23, 2025 and terminate on August 23, 2025.

42. Upon the termination of the lock-up period, Mr. Mazurkevich rightfully expected the Defendants to return the Principal Amount plus a fixed 8% dividend, in the amount of five thousand six hundred dollars ($5,600.00) within ten (10) business days, pursuant to the terms of the Agreement and Assignment of Partnership Interest.

43. However, Defendants never fulfilled their obligation to transfer the Principal Amount and 8% dividend to Mr. Mazurkevich pursuant to the Agreement.

44. Defendants advised Mr. Mazurkevich that redemptions had been suspended pursuant to a PPM dated April 2, 2025, despite having previously advised Mr. Mazurkevich that no such document existed.

45. Despite Mr. Mazurkevich's repeated demands for the Defendants to return the Principal Amount and 8% dividend, Defendants refused to return the amount pursuant to the Agreement.

---

[4] Plaintiffs note that Mr. Mazurkevich's Limited Partnership Agreement refers to the assignment of a limited partnership interest equal to $70,000.00 to Mr. Mazurkevich as a "gift." This is not accurate – Mr. Mazurkevich paid $70,000.00 to Defendants in return for his limited partnership interest.

**c. Siarhei Utlik**

46. On May 8, 2025, Mr. Utlik entered into a Limited Partnership Agreement with Defendants Ruzaev and Blackberg, whereby Mr. Utlik made a wire transfer of twenty-five thousand dollars ($25,000.00) (the "Principal Amount") in exchange for a 0.20% partnership interest in Blackberg. *See Exhibit 7, Agreement and Assignment of Partnership Interest.*

47. Pursuant to the Agreement, Mr. Utlik wired the Principal Amount into Defendants' account.

48. Under the Agreement, a one-year lock-up period for the Principal Amount would begin on May 8, 2025 and terminate on May 8, 2026.

49. Within the lock-up period, Mr. Utlik and Defendants agreed to an early closure of Mr. Utlik's account with Blackberg. Defendants confirmed to Mr. Utlik a return of the Principal Amount and a dividend in the amount of seven hundred seventy five dollars ($775.00) would be transferred to Mr. Utlik. *See Exhibit 8, Account Closure Notice.*

50. However, Defendants never fulfilled their obligation to transfer the Principal Amount and dividend to Mr. Utlik pursuant to the Agreement.

51. Despite Mr. Utlik's repeated demands for the Defendants to return the Principal Amount, Defendants refused to return the amount pursuant to the Agreement.

**B. Facts Common to All Plaintiffs**

52. Each Plaintiff notified Defendants that they had not received the promised funds.

53. To date, Defendants have refused to return the Principal Amounts to each Plaintiff, despite each Plaintiff's repeated demands that Defendants return their funds.

54. Defendants are thus in breach of their Agreements with each Plaintiff.

55. Mr. Mikhno suffered not less than twenty five thousand dollars ($25,000.00) in damages as a result of Defendants' illegal conduct. Mr. Mazurkevich suffered not less than seventy five thousand six hundred dollars ($75,600.00) in damages as a result of Defendants' illegal conduct. Mr. Utlik suffered not less than twenty five thousand seven hundred seventy five dollars ($25,775.00) in damages as a result of Defendants' illegal conduct.

## COUNT ONE: VIOLATIONS OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5 THEREUNDER AS TO ALL PLAINTIFFS

56. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 55, as if fully set forth herein.

57. Defendants, in connection with the purchase and sale of securities, by the use of the means and instrumentalities of interstate commerce or the mails, directly and indirectly: (a) used and employed devices, schemes, or artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud and deceit upon other persons, including Plaintiffs.

58. Specifically Defendants held Blackberg out to Plaintiffs as a legitimate business enterprise in soliciting their investments as limited partners.

59. In reality, Blackberg was nothing more than a sham vehicle used by Mr. Ruzaev to steal funds from investors.

60. Defendants further knowingly or negligently made a material omission of fact to Plaintiff when Defendants failed to advise each Plaintiff that Defendants had entered into identical agreements with several others, including but not limited to the other Plaintiffs here, whereby

Defendants failed to meet their obligation to return the Principal Amount invested together with the promised dividend to their counterparties.

61. Defendants knowingly engaged in the conduct detailed above.

62. By engaging in the conduct detailed above Defendants violated Section 10(b) of the Securities Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

63. As a result of Defendants' violations of Section 10(b) of the Securities Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], Mr. Mikhno has been damaged in an amount not yet fully ascertained, but believed to be in excess of twenty eight thousand seven hundred fifty dollars ($28,750.00), Mr. Mazurkevich has been damaged in an amount not yet fully ascertained, but believed to be in excess of seventy five thousand six hundred dollars ($75,600.00), and Mr. Utlik has been damaged in an amount not yet fully ascertained, but believed to be in excess of twenty five thousand seven hundred seventy five dollars ($25,775.00). Plaintiffs have been damaged in a total amount not less than one hundred thirty thousand one hundred twenty five dollars ($130,125.00) as a result of Defendants' violations of Section 10(b) of the Securities Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## COUNT TWO: BREACH OF CONTRACT AS TO ALL PLAINTIFFS

64. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 63, as if fully set forth herein.

65. The elements of a breach of contract claim in Delaware are: (1) the existence of a contract, (2) a breach of an obligation imposed by that contract, and (3) resultant damages.[5]

66. Each of the Plaintiffs entered into a Limited Partnership Agreement with Defendants, under which Plaintiffs promised to make initial Principal Amount Payments as described above, to be held by Defendants in exchange for Defendants' transfer of partnership interest to Plaintiffs.

67. Plaintiffs have performed all conditions precedent to bringing this action for breach of contract.

68. Defendants have breached their contractual relationship with Plaintiffs by failing to return the Principal Amount Payments to each Plaintiff, despite Plaintiffs' continued requests.

69. As a result of Defendants' breach of contract, Mr. Mikhno has been damaged in an amount not yet fully ascertained, but believed to be in excess of twenty eight thousand seven hundred fifty dollars ($28,750.00), Mr. Mazurkevich has been damaged in an amount not yet fully ascertained, but believed to be in excess of seventy five thousand six hundred dollars ($75,600.00), and Mr. Utlik has been damaged in an amount not yet fully ascertained, but believed to be in excess of twenty five thousand seven hundred seventy five dollars ($25,775.00). Plaintiffs have been damaged in a total amount not less than one hundred thirty thousand one hundred twenty five dollars ($130,125.00) as a result of Defendants' breach of contract.

**COUNT THREE:**
**FRAUD AS TO ALL PLAINTIFFS**

70. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 69 as if fully set forth herein.

[5] *See VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

71. To establish a claim for fraud, a plaintiff must prove a false representation, a defendant's knowledge or belief of its falsity or his reckless indifference to its truth, a defendant's intention to induce action, reasonable reliance, and causally related damages.[6]

72. "Under Superior Court Civil Rule 9(b), when pleading fraud claims, '[t]he circumstances constituting fraud ... shall be stated with particularity,' although '[m]alice, intent, knowledge and other condition of mind of a person may be averred generally.'[27] Under the particularity requirement, a plaintiff must plead 'the time, place, and contents of the false representations, as well as the identity of the person making the representation.'" KnighTek, LLC v. Jive Commc'ns, Inc., 225 A.3d 343, 351 (Del. 2020).

73. "'When a party sues based on a written representation in a contract ... it is relatively easy to plead a particularized claim of fraud' because the surrounding circumstances are largely evidenced by the contract itself." Matrix Parent, Inc. v. Audax Mgmt. Co., LLC, 319 A.3d 909, 933 (Del. Super. Ct. 2024)

74. Defendants knowingly made false misrepresentations of fact to each Plaintiff when Defendants represented to each Plaintiff that Defendants would return each Plaintiffs' respective Principal Amount together with a promised dividend to each Plaintiff by a date certain.

75. Defendants further knowingly made false misrepresentations of fact to each Plaintiff in holding Blackberg out as a legitimate business enterprise to each Plaintiff.

76. Defendants further knowingly made a material omission of fact to each Plaintiff when Defendants failed to advise each Plaintiff that Defendants had entered into identical agreements with several others, including but not limited to the other Plaintiffs here, whereby

---

[6] *See In re Wayport, Inc. Litig.*, 76 A.3d 296, 323 (Del. Ch. 2013).

Defendants failed to meet their obligation to return the Principal Amount invested together with the promised dividend to their counterparties.

77. Defendants intended to induce Plaintiffs into executing their respective Limited Partnership Agreements and making their respective Principal Amount Payments to Defendants by making these representations.

78. Each Plaintiff did make the Principal Amount Payment to Defendants in reliance on Defendants' representations.

79. However, upon each respective contractual termination date, and thereafter, Defendants refused to return the Principal Amount together with the promised dividend to each Plaintiff.

80. As a result of Defendants' fraud, Mr. Mikhno has been damaged in an amount not yet fully ascertained, but believed to be in excess of twenty eight thousand seven hundred fifty dollars ($28,750.00). Mr. Mazurkevich has been damaged in an amount not yet fully ascertained, but believed to be in excess of seventy five thousand six hundred dollars ($75,600.00). Mr. Utlik has been damaged in an amount not yet fully ascertained, but believed to be in excess of twenty five thousand seven hundred seventy five dollars ($25,775.00). In total, Plaintiffs have been damaged in an amount not less than one hundred thirty thousand one hundred twenty five dollars ($130,125.00) as a result of Defendants' fraud.

**COUNT FOUR:**
**SECURITIES FRAUD IN VIOLATION OF DELAWARE CODE ANNOTATED TITLE 6, § 73-605(a)(2) OF THE DELAWARE SECURITIES ACT**

81. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 80 as if fully set forth herein.

82. Section 73-605(a)(2) of the Delaware Securities Act provides that "Any person who: Offers, sells or purchases a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statement made, in the light of the circumstances under which they are made, not misleading (the buyer or seller not knowing of the untruth or omission), and who does not sustain the burden of proof that the person did not know, and in the exercise of reasonable care could not have known of the untruth or omission, is liable to the person buying or selling the security from or to him or her, who may sue either at law or in equity to recover the consideration paid for the security, together with the interest at the legal rate from the date of payment costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he or she no longer owns the security." Del. Code Ann. tit. 6, § 73-605 (West).

83. Here, Defendants knowingly made false misrepresentations of fact to each Plaintiff when Defendants represented to each Plaintiff upon each Plaintiff's respective execution of his respective Agreement and Assignment of Partnership Interest that Defendants would return each Plaintiffs' respective Principal Amount together with a promised dividend to each Plaintiff by a date certain.

84. Defendants further knowingly made false misrepresentations of fact to each Plaintiff in holding Blackberg out as a legitimate business enterprise to each Plaintiff.

85. Defendants further knowingly made a material omission of fact to each Plaintiff when Defendants failed to advise each Plaintiff that Defendants had entered into identical agreements with several others, including but not limited to the other Plaintiffs here, whereby Defendants failed to meet their obligation to return the Principal Amount invested together with the promised dividend to their counterparties.

86. Defendants intended to induce Plaintiffs into purchasing interests in the Blackberg Limited Partnership, said partnership interests constituting securities, and making their respective Principal Amount Payments to Defendants by making these representations.

87. Each Plaintiff did purchase a partnership interest by making the Principal Amount Payment to Defendants in reliance on Defendants' representations.

88. However, upon each respective contractual termination date, and thereafter, Defendants refused to return the Principal Amount together with the promised dividend to each Plaintiff.

89. As a result of Defendants' violation of the Delaware Securities Act, Mr. Mikhno has been damaged in an amount not yet fully ascertained, but believed to be in excess of twenty eight thousand seven hundred fifty dollars ($28,750.00). Mr. Mazurkevich has been damaged in an amount not yet fully ascertained, but believed to be in excess of seventy five thousand six hundred dollars ($75,600.00). Mr. Utlik has been damaged in an amount not yet fully ascertained, but believed to be in excess of twenty five thousand seven hundred seventy five dollars ($25,775.00). In total, Plaintiffs have been damaged in an amount not less than one hundred thirty thousand one hundred twenty five dollars ($130,125.00) as a result of Defendants' fraud.

90. Pursuant to Section 73-605(a)(2) of the Delaware Securities Act, Plaintiffs are further entitled to an award of their reasonable attorneys' fees incurred as a result of Defendants' violation of the Delaware Securities Act.

**COUNT FIVE:**
**MISREPRESENTATION AND OMISSION AS TO ALL PLAINTIFFS**

91. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 90 as if fully set forth herein.

92. A claim for negligent misrepresentation requires the plaintiff to plead four elements: (1) the defendant had a pecuniary duty to provide accurate information, (2) the defendant supplied false information, (3) the defendant failed to exercise reasonable care in obtaining or communicating the information, and (4) the plaintiff suffered a pecuniary loss caused by justifiable reliance upon the false information.[7]

93. Defendants had a duty to impart correct information to Plaintiffs regarding the terms of the Limited Partnership Agreements executed by the Parties, by which Plaintiffs made Principal Amount Payments as detailed above in consideration for Defendants' promise of a dividend of the Principal Amount.

94. Defendants knowingly or negligently made a material misrepresentation of fact to each Plaintiff when Defendants represented to each Plaintiff that Defendants would return Plaintiffs' Principal Amount Payments plus dividends upon the termination of the Term.

95. Defendants further knowingly made false misrepresentations of fact to each Plaintiff in holding Blackberg out as a legitimate business enterprise to each Plaintiff.

96. Defendants further knowingly or negligently made a material omission of fact to Plaintiff when Defendants failed to advise each Plaintiff that Defendants had entered into identical agreements with several others, including but not limited to the other Plaintiffs here, whereby Defendants failed to meet their obligation to return the Principal Amount invested together with the promised dividend to their counterparties.

97. Plaintiffs reasonably relied on this information in making their respective decisions to enter into their respective Limited Partnership Agreements with Defendants.

---

[7] *See Blueacorn PPP, LLC v. Pay Nerd LLC*, 310 A.3d 590, 594 (Del. Ch. 2024).

98. As a result of Defendants' misrepresentations and omissions, Mr. Mikhno has been damaged in an amount not yet fully ascertained, but believed to be in excess of twenty eight thousand seven hundred fifty dollars ($28,750.00). Mr. Mazurkevich has been damaged in an amount not yet fully ascertained, but believed to be in excess of seventy five thousand six hundred dollars ($75,600.00). Mr. Utlik has been damaged in an amount not yet fully ascertained, but believed to be in excess of twenty five thousand seven hundred seventy five dollars ($25,775.00). In total, Plaintiffs have been damaged in an amount not less than one hundred thirty thousand one hundred twenty five dollars ($130,125.00) as a result of Defendants' misrepresentations and omissions.

## COUNT SIX: BREACH OF THE DUTY OF GOOD FAITH & FAIR DEALING AS TO ALL PLAINTIFFS

99. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 98 as if fully set forth herein.

100. "To prevail on an implied covenant claim, a plaintiff must prove a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff."[8]

101. As a result of Plaintiffs' respective Limited Partnership Agreement with Defendants, Plaintiffs expected Defendants to act in accordance with the terms of the Limited Partnership Agreements and return the Principal Amount Payments plus Dividends to Plaintiffs upon the termination of the Term.

---

[8] *Cygnus Opportunity Fund, LLC v. Washington Prime Grp., LLC*, 302 A.3d 430, 458 (Del. Ch. 2023)

102. Defendants withheld a benefit from Plaintiffs when Defendants did not return Plaintiffs' respective Limited Partnership Payments to Plaintiffs upon the termination of the lock-up period.

103. As a result of Defendants' breach of their duties of good faith and fair dealing, Mr. Mikhno has been damaged in an amount not yet fully ascertained, but believed to be in excess of twenty eight thousand seven hundred fifty dollars ($28,750.00). Mr. Mazurkevich has been damaged in an amount not yet fully ascertained, but believed to be in excess of seventy five thousand six hundred dollars ($75,600.00). Mr. Utlik has been damaged in an amount not yet fully ascertained, but believed to be in excess of twenty five thousand seven hundred seventy five dollars ($25,775.00). In total, Plaintiffs have been damaged in an amount not less than one hundred thirty thousand one hundred twenty five dollars ($130,125.00) as a result of Defendants' breach of the duty of good faith and fair dealing.

**COUNT SEVEN:**
**CONVERSION AS TO ALL PLAINTIFFS**

104. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 103 as if fully set forth herein.

105. To establish a conversion claim in Delaware, a plaintiff must prove three essential elements: (1) the plaintiff had a property interest in the converted goods; (2) the plaintiff had a right to possession of the goods; and (3) the property was converted or the plaintiff sustained damages.[9]

106. Here, the property subject to conversion is each of Plaintiffs' respective Principal Payments.

[9] *See Goodrich v. E.F. Hutton Grp., Inc.*, 542 A.2d 1200, 1203 (Del. Ch. 1988).

107. Defendants had ownership and control over each of Plaintiffs' respective Principal Payments before its conversion.

108. Defendants exercised an unauthorized dominion over each Principal Payment when Defendants failed to return the Principal Payments to Plaintiffs, despite Plaintiffs' written notice to Defendants thereof.

109. As a result of Defendants' conversion, Mr. Mikhno has been damaged in an amount not yet fully ascertained, but believed to be in excess of twenty eight thousand seven hundred fifty dollars ($28,750.00). Mr. Mazurkevich has been damaged in an amount not yet fully ascertained, but believed to be in excess of seventy five thousand six hundred dollars ($75,600.00). Mr. Utlik has been damaged in an amount not yet fully ascertained, but believed to be in excess of twenty five thousand seven hundred seventy five dollars ($25,775.00). In total, Plaintiffs have been damaged in an amount not less than one hundred thirty thousand one hundred twenty five dollars ($130,125.00) as a result of Defendants' conversion.

## COUNT EIGHT:
## UNJUST ENRICHMENT AS TO ALL PLAINTIFFS

110. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 109 as if fully set forth herein.

111. An unjust enrichment claim requires that plaintiff shows "(1) an enrichment, (2) an impoverishment, (3) a relationship between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law."[10]

[10] *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).

112. The essence of an unjust enrichment claim is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience."[11]

113. Defendants were enriched by retaining Plaintiffs' respective Principal Amount Payments after failing to return the funds promised to Plaintiffs.

114. Defendants were enriched at Plaintiffs' expense because as a result of Defendants' failure to return the Principal Amount Payments to each Plaintiff, Plaintiffs were deprived of the funds constituting their Principal Amount Payments.

115. It is against equity and good conscience to permit Defendants to retain the Principal Amount Payments because Defendants had an obligation to return the Principal Amount Payments plus dividends to Plaintiffs upon the termination of the Term.

116. As a result of Defendants' unjust enrichment, Mr. Mikhno has been damaged in an amount not yet fully ascertained, but believed to be in excess of twenty eight thousand seven hundred fifty dollars ($28,750.00). Mr. Mazurkevich has been damaged in an amount not yet fully ascertained, but believed to be in excess of seventy five thousand six hundred dollars ($75,600.00). Mr. Utlik has been damaged in an amount not yet fully ascertained, but believed to be in excess of twenty five thousand seven hundred seventy five dollars ($25,775.00). In total, Plaintiffs have been damaged in an amount not less than one hundred thirty thousand one hundred twenty five dollars ($130,125.00) as a result of Defendants' unjust enrichment.

---

[11] *Id.*

**COMPENSATORY DAMAGES, INTEREST, PUNITIVE DAMAGES, AND ATTORNEYS' FEES**

117. For all of the foregoing reasons, the Court should award Plaintiffs compensatory damages in an amount to be determined at trial but not less than twenty eight thousand seven hundred fifty dollars ($28,750.00) to Mr. Mikhno, seventy five thousand six hundred dollars ($75,600.00) to Mr. Mazurkevich, and twenty five thousand seven hundred seventy five dollars ($25,775.00) to Mr. Utlik. In total, the Court should award compensatory damages to Plaintiffs in an amount to be determined at trial but not less than one hundred thirty thousand one hundred twenty five dollars ($130,125.00).

118. The Court should additionally award each Plaintiff interest accrued at the rate of five percent (5%) over the Federal Discount Rate per annum from the date each respective Limited Partnership Agreement was breached by Defendants until the date of payment pursuant to Del. Code Ann. tit. 6, § 2301 (West).[12]

119. The Court should additionally award each Plaintiff his respective attorneys' fees pursuant to Section 11.10 of each respective Limited Partnership Agreement, which provides the Court authority to award attorneys' fees in connection with disputes arising from the Agreements, and pursuant to Section 73-605(a)(2) of the Delaware Securities Act, which authorizes the Court to award attorneys' fee related to securities fraud under the Delaware Securities Act. *See Exhibits 9, 10, and 11, Limited Partnership Agreements.*

120. The Court should additionally award each punitive damages to each Plaintiff.

121. Under Delaware law, "to recover punitive damages requires demonstration of a defendant's 'outrageous conduct,' 'an evil motive,' or 'reckless indifference.'" Laugelle v. Bell

[12] "Where there is no expressed contract rate, the legal rate of interest shall be 5% over the Federal Reserve discount rate including any surcharge as of the time from which interest is due[.]" Del. Code Ann. tit. 6, § 2301 (West).

Helicopter Textron, Inc., 88 A.3d 110, 125 (Del. Super. Ct. 2014), as corrected (Mar. 19, 2014), on reargument, No. CV 10C-12-054 PRW, 2014 WL 2699880 (Del. Super. Ct. June 11, 2014)

122. Here, Defendants willfully defrauded each of the Plaintiffs, and others, employing an identical scheme and making use of identical Agreements as detailed above.

123. Defendants continued to defraud new investors even after Defendants were unable to consummate the earlier transactions, and refused to return the Principal Payments they obtained through fraud to any of the Plaintiffs.

124. Defendants' conduct towards Plaintiffs rises to the level of morally culpable conduct that punitive damages are intended to deter.

125. As a result of Defendants' willful fraud, Plaintiffs request punitive damages be awarded in an amount not less than three times the compensatory damages awarded to each respective Plaintiff, along with attorney's fees and interest.

**WHEREFORE,** Plaintiff requests the following relief:

a. On the First Count, awarding compensatory damages in an amount to be determined at trial but not less than twenty eight thousand seven hundred fifty dollars ($28,750.00) to Mr. Mikhno, seventy five thousand six hundred dollars ($75,600.00) to Mr. Mazurkevich, and twenty five thousand seven hundred seventy five dollars ($25,775.00) to Mr. Utlik. In total, awarding compensatory damages in an amount to be determined at trial but not less than one hundred thirty thousand one hundred twenty five dollars ($130,125.00);

b. On the Second Count, awarding compensatory damages in an amount to be determined at trial but not less than twenty eight thousand seven hundred fifty dollars ($28,750.00) to Mr. Mikhno, seventy five thousand six hundred dollars ($75,600.00) to Mr.

Mazurkevich, and twenty five thousand seven hundred seventy five dollars ($25,775.00) to Mr. Utlik. In total, awarding compensatory damages in an amount to be determined at trial but not less than one hundred thirty thousand one hundred twenty five dollars ($130,125.00);

c. On the Third Count, awarding compensatory damages in an amount to be determined at trial but not less than twenty eight thousand seven hundred fifty dollars ($28,750.00) to Mr. Mikhno, seventy five thousand six hundred dollars ($75,600.00) to Mr. Mazurkevich, and twenty five thousand seven hundred seventy five dollars ($25,775.00) to Mr. Utlik. In total, awarding compensatory damages in an amount to be determined at trial but not less than one hundred thirty thousand one hundred twenty five dollars ($130,125.00), together with Plaintiff's reasonable attorneys' fees pursuant to Section 73-605(a)(2) of the Delaware Securities Act;

d. On the Fourth Count, awarding compensatory damages in an amount to be determined at trial but not less than twenty eight thousand seven hundred fifty dollars ($28,750.00) to Mr. Mikhno, seventy five thousand six hundred dollars ($75,600.00) to Mr. Mazurkevich, and twenty five thousand seven hundred seventy five dollars ($25,775.00) to Mr. Utlik. In total, awarding compensatory damages in an amount to be determined at trial but not less than one hundred thirty thousand one hundred twenty five dollars ($130,125.00);

e. On the Fifth Count, awarding compensatory damages in an amount to be determined at trial but not less than twenty eight thousand seven hundred fifty dollars ($28,750.00) to Mr. Mikhno, seventy five thousand six hundred dollars ($75,600.00) to Mr. Mazurkevich, and twenty five thousand seven hundred seventy five dollars

($25,775.00) to Mr. Utlik. In total, awarding compensatory damages in an amount to be determined at trial but not less than one hundred thirty thousand one hundred twenty five dollars ($130,125.00);

f. On the Sixth Count, awarding compensatory damages in an amount to be determined at trial but not less than twenty eight thousand seven hundred fifty dollars ($28,750.00) to Mr. Mikhno, seventy five thousand six hundred dollars ($75,600.00) to Mr. Mazurkevich, and twenty five thousand seven hundred seventy five dollars ($25,775.00) to Mr. Utlik. In total, awarding compensatory damages in an amount to be determined at trial but not less than one hundred thirty thousand one hundred twenty five dollars ($130,125.00);

g. On the Seventh Count, awarding compensatory damages in an amount to be determined at trial but not less than twenty eight thousand seven hundred fifty dollars ($28,750.00) to Mr. Mikhno, seventy five thousand six hundred dollars ($75,600.00) to Mr. Mazurkevich, and twenty five thousand seven hundred seventy five dollars ($25,775.00) to Mr. Utlik. In total, awarding compensatory damages in an amount to be determined at trial but not less than one hundred thirty thousand one hundred twenty five dollars ($130,125.00);

h. On the Eighth Count, awarding compensatory damages in an amount to be determined at trial but not less than twenty eight thousand seven hundred fifty dollars ($28,750.00) to Mr. Mikhno, seventy five thousand six hundred dollars ($75,600.00) to Mr. Mazurkevich, and twenty five thousand seven hundred seventy five dollars ($25,775.00) to Mr. Utlik. In total, awarding compensatory damages in an amount to

be determined at trial but not less than one hundred thirty thousand one hundred twenty five dollars ($130,125.00);

i. As to all Counts, awarding punitive damages in an amount not less than three times compensatory damages to each Plaintiff;

j. As to all Counts, awarding each Plaintiff their respective reasonable attorneys' fees and costs;

k. As to all Counts, awarding interest accruing from the date of Defendants' breach of contract;

l. As to all Counts, awarding Plaintiffs' compensatory damages totaling an amount in excess of than one hundred thirty thousand one hundred twenty five dollars ($130,125.00) plus interest, costs, reasonable attorneys' fees and punitive damages;

m. As to all Counts, awarding such other and further relief as the Court deems just and fair.

Dated: New York, New York
November 16, 2026

Respectfully Submitted,

Kevin P. Conway, Esq.
Conway & Conway
*Attorneys for Plaintiffs*
99 Park Avenue, Suite 810
New York, NY 10016
(212) 938-1080
kpc@conway-conway.com